UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
———————————————————————x

In re:                                                    Case No: 8-13-74213-las

MICHAEL W. KOPER,                                         Chapter 7

        Debtor.
———————————————————————x

INTERNATIONAL CHRISTIAN
BROADCASTING, INC., and TRINITY
CHRISTIAN CENTER OF SANTA ANA, INC.,                      Adv. Pro. No.  13-08167-las
                                                          Adv. Pro. No.  13-08168-las
        Plaintiffs,                  Adv. Pro. No.  13-08169-las

   v.

MICHAEL W. KOPER,

        Defendant.
———————————————————————x


## DECISION AND ORDER DENYING
## DEFENDANT'S MOTION UNDER FED. R. CIV. P. 60(b)


I.      **Introduction**

     Defendant Michael W. Koper moves this Court under Rules 60(b)(3) and (6) of the

Federal Rules of Civil Procedure ("Fed. R. Civ. P."), made applicable to these adversary

proceedings by Rule 9024 of the Federal Rules of Bankruptcy Procedure (the "Rule 60(b)

Motion") [Adv. Dkt. No. 272][1], to vacate (i) the Order Approving Stipulation [Adv. Dkt. No.

262], (ii) the Order Granting Sanctions Motion on Consent [Adv. Dkt. No. 263], and (iii) the

Judgment on Consent [Adv. Dkt. No. 264] entered by the Court on October 30, 2015, and to

restore the evidentiary hearing on the sanctions motion and trial in these adversary

---

[1] Unless otherwise stated, citations to docket entries in the adversary proceeding, Adv. Pro. No. 13-8167, are cited as "[Adv. Dkt. No. ____]."

proceedings to the Court's docket. Plaintiffs International Christian Broadcasting, Inc. ("ICB") and Trinity Christian Center of Santa Ana, Inc. ("TCCSA"), doing business as Trinity Broadcasting Network ("TBN"), oppose the Rule 60(b) Motion. [Adv. Dkt. No. 273].

The matter has been fully briefed and the Court has considered carefully the parties' submissions, the relevant law and the record in this case. The Court held a hearing on March 3, 2016. Upon completion of the hearing, and for the reasons set forth on the record of the hearing, the Court denied the Rule 60(b) Motion. This Decision and Order memorializes and explains further the bases for the Court's ruling.

## II.      Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012, effective *nunc pro tunc* as of June 23, 2011. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). A bankruptcy judge may hear and finally determine any core proceeding. 28 U.S.C. § 157(b)(1). A proceeding to determine the dischargeability of a debt "stems from the bankruptcy itself," and may constitutionally be decided by a bankruptcy judge. *Stern v. Marshall*, 131 S. Ct. 2594, 2618 (2011). Accordingly, final judgment is within the scope of the Court's jurisdictional and constitutional authority.

## III.      Background[2]

---

[2] Unless otherwise noted, the facts are taken from the parties' submissions in connection with the Rule 60(b) Motion. The Court has also taken judicial notice of the docket in each of the adversary proceedings and the docket in the main bankruptcy case (Case No. 13-74213). *See Teamsters Nat'l Freight Indus. Negotiating Comm. et al. v. Howard's Express, Inc. (In re Howard's Express, Inc.)*, 151 F. Appx. 46, 48 (2d Cir. 2005) (stating that courts are empowered to take judicial notice of public filings, including a court's docket); *Levine v. Egidi*, No. 93 C 188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993); *Katzenstein v. VIII SV5556 Lender, LLC (In re Saint Vincent's Catholic Med. Ctrs. of N.Y.)*, 440 B.R. 587, 599 (Bankr. S.D.N.Y. 2010) (taking judicial notice of the docket in the underlying bankruptcy case); *In re Campbell*, 500 B.R. 56, 59 n.7 (Bankr. D.N.M. 2013) (electing to take judicial notice of the entire file in the case for sake of completeness as a bankruptcy court has the inherent authority to take judicial notice of entries on its own docket).

The facts of this case and its procedural history are discussed in the Court's prior Memorandum Decision and Order dated September 30, 2014 [Adv. Dkt. No. 136], familiarity with which is assumed. Accordingly, the Court provides background only to the extent necessary to resolve the pending Rule 60(b) Motion.

Defendant is an attorney. He and his former spouse, Brittany Koper (n/k/a Brittany Davidson) ("Brittany"), were previously employed by plaintiffs. Their employment terminated in September of 2011. Since then, plaintiffs, defendant and Brittany have been engaged in long and contentious litigation in various jurisdictions both at the federal and state court level. On August 14, 2013, defendant filed for relief under chapter 7 of the Bankruptcy Code, thus staying all litigation pending against him pursuant to section 362(a) of the Bankruptcy Code.

On October 14, 2013, ICB filed Proof of Claim No. 1 in the amount of $6,900,000 and TCCSA filed Proof of Clam No. 2 in the amount of $800,000. By far, plaintiffs hold the largest unsecured claims lodged against defendant. On the same day they filed their proofs of claim, plaintiffs commenced the referenced adversary proceedings against defendant seeking a determination of dischargeability of debt under 11 U.S.C. §§ 523(a)(2), (a)(4) and (a)(6).[3] As with the non-bankruptcy litigation, this litigation too has been a long and contentious one, spanning over two and a half years with multiple rounds of motion practice. Pursuant to a Second Amended Scheduling Order entered on May 4, 2015, discovery closed on June 30, 2015. [Adv. Dkt. No. 191].

---

[3] Adv. Pro. No. 13-8167 was commenced by plaintiff International Christian Broadcasting, Inc., Adv. Pro. No. 13-8168 was commenced by plaintiff Trinity Christian Center of Santa Ana, Inc., and Adv. Pro. No. 13-8169 was commenced by both plaintiffs. Pursuant to an Order dated Oct. 1, 2014, the adversary proceedings were consolidated for trial. [Adv. Dkt. No. 137].

On April 1, 2015, plaintiffs filed a Motion for Sanctions Concerning Defendant's Fabrication of Evidence and Perpetration of Fraud on the Court (the "Sanctions Motion") [Adv. Dkt. No. 172]. The Sanctions Motion alleged, *inter alia*, that defendant (i) fabricated documents to make it appear that defendant and Brittany were authorized to expend plaintiffs' funds, (ii) scanned these documents onto his Sony VAIO computer and manually manipulated the VAIO's internal computer system clock time settings to make it appear that the documents had been created or modified on those artificial "roll back" dates, (iii) used the VAIO computer to gain access to an email account of TBN and illegally procured plaintiffs' confidential corporate and legal records, (iv) installed a Lotus Notes email program on the VAIO computer which was used to fabricate emails purporting to have been sent or received in years prior to 2012, (v) installed and operated a program known as CCleaner on the VAIO computer to overwrite information and render such information on the VAIO computer unrecoverable, (vi) intentionally destroyed material evidence that supported plaintiffs' claims against him regarding the nondischargeability of his debt to the plaintiffs, and (vii) acted willfully, maliciously and with intent to defraud the plaintiffs and the Court. The Sanctions Motion sought an order (a) striking defendant's answer and counterclaim in these adversary proceedings, and (b) awarding monetary sanctions in the form of attorneys' fees and costs incurred with respect to the Sanctions Motion. On May 5, 2015, defendant filed a sworn declaration [Adv. Dkt. No. 193] and a memorandum of law [Adv. Dkt. No. 194] in opposition to the Sanctions Motion. Plaintiffs filed a reply on May 12, 2015. [Adv. Dkt. No. 199].

A hearing on the Sanctions Motion, with a trial to commence immediately thereafter, was scheduled for the week of October 26, 2015. A Joint Pretrial Statement on Non-Dischargeability Complaints and Sanctions Motion signed by plaintiffs' counsel and by defendant and his counsel, was filed with the Court on September 14, 2015. [Adv. Dkt. No. 235].

On the morning of October 26, 2015, prior to commencement of the hearing on the Sanctions Motion, the parties requested additional time to continue their discussions in an effort to resolve the pending dispute. The Court allowed the parties to use the courtroom and adjacent conference room to continue their negotiations. Later that morning, the parties presented the Court with a Stipulation of Resolution of Sanctions Motion and Stipulation to Judgment in Adversary Proceeding ("Stipulation"). [Adv. Dkt. No. 262-1]. The Stipulation was signed by plaintiffs and defendant, as well as by Michael J. King, Esq., counsel for plaintiffs, and by David R. Keesling, Esq., counsel for defendant. The Stipulation was read into the record by plaintiffs' counsel on October 26, 2015. The Stipulation provides in relevant part as follows:

> **WHEREAS,** the Parties through their respective attorneys have conferred and agreed on this matter and agreed to settle the adversary proceeding . . . on the following specified terms and conditions.

> **NOW, THEREFORE, THE PARTIES HEREIN DO HEREBY STIPULATE AND AGREE AS FOLLOWS:**

> 1. **SANCTIONS MOTION GRANTED IN ITS ENTIRETY:**

> The Debtor/Defendant stipulates and agrees that the allegations set forth in the above-referenced sanctions motion (the "Motion"), papers, pleadings and recordings (Trial Exhibits 99-106) submitted by Plaintiffs in support thereof, are conceded; Debtor/Defendant withdraws all objections and oppositions thereto; Debtor/Defendant waives all rights to appeal or otherwise challenge this stipulation; and that this Court shall enter appropriate findings of fact and conclusions of law consistent with the Motion and the requested relief.

> 2. **DEBT NOT DISCHARGED IN THIS BANKRUPTCY PROCEEDING**

> The Debtor/Defendant stipulates and agrees that the allegations and debts set forth in the above-referenced Adversary Proceedings are conceded and not discharged or dischargeable under the Bankruptcy Code in this Chapter 7 bankruptcy proceeding pursuant to 11 USC 523, and that this Court shall enter appropriate findings of fact and conclusions of law consistent with the allegations in the Adversary Proceedings and enter a judgment thereon.

> 3. **BINDING EFFECT:** This Stipulation is binding on the parties, their heirs, successors and assigns.

Stipulation, at 2.

At the October 26, 2015 hearing, defendant testified that he had an opportunity to read and discuss the Stipulation with his counsel and that he understood the terms and conditions to which he had agreed. [Oct. 26, 2015 Hr'g Tr. 11:13-24; 12:1-3; 12:14-24; 13:11-17; 17:1-7]. In addition, defendant's counsel confirmed to the Court that he had an opportunity to review the terms and conditions of the Stipulation and to discuss them with defendant[4]. [Oct. 26, 2015 Hr'g Tr. 17:8-13].

The parties spent the remainder of the day negotiating the language of the proposed order resolving the Sanctions Motion and the form of the consent judgment. These negotiations continued to the next day, October 27, 2015. In the afternoon of October 27, 2015, the parties submitted a proposed "Order Granting Sanctions Motion on Consent" and "Judgment on Consent" which contained the proposed findings of fact and conclusions of law agreed upon by the parties. The parties advised that they were continuing to discuss the amount of the monetary sanctions and the amount of the nondischargeable debt. [Oct. 27, 2015 Hr'g Tr. 47:19-48:2]. The Court stated that it would issue a briefing schedule and set a hearing date should the parties fail to reach agreement on those issues. [Oct. 27, 2015 Hr'g Tr. 48:3-12, 48:19-23].

On October 30, 2015, after careful review and consideration of the proposed findings of fact and conclusions of law submitted by the parties, the Court entered (i) the Order Approving Stipulation, (ii) the Order Granting Sanctions Motion on Consent (the "Sanctions Order"), and (iii) the Judgment on Consent ("Consent Judgment"), substantially unchanged from the version presented by the parties. In addition to defendant conceding in the

---

[4] Before defendant testified, counsel represented to the Court that he advised defendant against signing the Stipulation [Oct. 26, 2015 Hr'g Tr. 9:8-21], but he nevertheless confirmed that he signed the Stipulation as counsel for defendant. [Oct. 26, 2015 Hr'g Tr. 9:22-24].

Sanctions Order the factual allegations and conclusions of law set forth therein, the Sanctions Order also (a) directed that defendant's answer and counterclaim filed in each of the adversary proceedings be stricken, (b) directed plaintiffs to file with the Court and serve on defendant and his counsel supplemental pleadings in support of their request for monetary sanctions within 21 days of the entry of the Sanctions Order, and (c) directed defendant to file any reply to such supplemental pleadings within 14 days thereafter.  Unable to resolve the issue on monetary damages, plaintiffs filed their supplemental memorandum of law in support of their request for attorneys' fees and costs relating to the Sanctions Motion on November 20, 2015.  Defendant did not file a reply within the fourteen day time frame set forth in the Sanctions Order.[5]

On January 19, 2016, defendant filed the Rule 60(b) Motion.  In support of the Rule 60(b) Motion, defendant filed his declaration ("Koper Decl.") [Adv. Dkt. No. 272-1] and a memorandum of law ("Def. Mem.") [Adv. Dkt. No. 272-2].  Defendant makes two arguments. First is that the Order Approving Stipulation, Sanctions Order and Consent Judgment should be set aside under Fed. R. Civ. P. 60(b)(3) because plaintiffs "made misrepresentations and committed misconduct" to induce defendant to enter into the Stipulation and consent to the relief requested in the Sanctions Motion and to judgment in favor of plaintiffs on all counts.  Def. Mem., at 3.  In particular, defendant contends that plaintiffs "specifically promised to dismiss all pending litigation with [defendant] and not seek to collect money from [defendant] unless he violated a confidentiality agreement." Def. Mem., at 3.  On the whole, defendant  maintains that the parties reached an additional agreement on the morning of October 26, 2015 to enter into a global settlement of all pending litigation among plaintiffs,

---

[5] Pursuant to the Sanctions Order, defendant's reply was due no later than December 4, 2015.  Defendant did not file a reply by December 4, 2015, nor did he request an extension of time to do so. On February 25, 2016, eighty-three days after the Court-imposed deadline by which a reply was due, defendant filed a memorandum of law [Adv. Dkt. No. 274] in opposition to plaintiffs' requests for attorneys' fees and costs.

defendant and Brittany, and that plaintiffs have failed to finalize the additional settlement terms. Defendant asserts that absent the promise of a global settlement he would not have signed the Stipulation nor consented to the entry of the Sanctions Order and Consent Judgment. In short, defendant seeks to read into the Stipulation a condition to its effectiveness, contending that his consent to the entry of the Sanctions Order and Consent Judgment was subject to a global settlement resolving all issues among the parties.

Second, defendant argues that the Stipulation, the Sanctions Order and the Consent Judgment should be set aside under Fed. R. Civ. P. 60(b)(6) based on the same false statements and conduct by plaintiffs that defendant asserts warrant relief under Fed. R. Civ. P. 60(b)(3), and because he, Brittany, and Brittany's sister, Carra Crouch[6], will suffer irreparable harm if plaintiffs are permitted to use the Order Approving Stipulation, Sanctions Order and Consent Judgment against them in pending state and federal court actions.

On February 24, 2016, plaintiffs filed a response in opposition to the Rule 60(b) Motion [Adv. Dkt. No. 273]. In support of their response, plaintiffs filed the Declaration of Michael J. King, Esq. ("King Decl.") [Adv. Dkt. No. 273-1] and the Declaration of Colby M. May. Esq. ("May Decl.") [Adv. Dkt. No. 273-2]. Mr. King is counsel to plaintiffs and Mr. May is a member of the Board of Directors of TCCSA. Plaintiffs contend the Stipulation was not conditioned on reaching a global settlement of other pending litigation with defendant and Brittany, nor did plaintiffs offer up a global settlement in return for defendant's entry into the Stipulation and consent to the Sanctions Motion and judgment on all counts in the nondischargeability complaints. Plaintiffs argue that while the parties did discuss additional settlement terms and agreed to continue those discussions, no agreement was reached

---

[6] Carra Crouch is a plaintiff in an unrelated lawsuit against TCCSA.

regarding the terms of a global settlement nor was there a promise of such a global settlement as alleged by defendant in the Rule 60(b) Motion.

In reply to plaintiffs' response and in further support of the Rule 60(b) Motion, on February 29, 2016, defendant filed the Declaration of David R. Keesling, Esq. ("Keesling Reply Decl.") [Adv. Dkt. No. 275] and a memorandum of law [Adv. Dkt. No. 276]. In his reply, defendant principally contends that the Stipulation did not include the additional settlement terms because the parties had agreed that (i) the Stipulation would not contain such terms or make reference to them, and (ii) the terms would be subject to a confidentiality agreement. Keesling Reply Decl. ¶ 10.

## IV.     Discussion

Defendant did not appeal the Order Approving Stipulation or the Sanctions Order, nor did he appeal or move to alter or amend the Consent Judgment, and the time do so has long passed.[7]  Furthermore, pursuant to the Stipulation, defendant "waive[d] all rights to appeal or otherwise challenge this [S]tipulation."[8]  Yet, despite his having failed to timely file an appeal or move under Fed. R. Civ. P. 59, and despite his having waived his right to appeal or otherwise challenge the orders and judgment to which he expressly consented, defendant

---

[7] Bankruptcy Rule 8002(a) provides that "[t]he notice of appeal shall be filed with the clerk within 14 days of the date of the entry of the judgment, order, or decree appealed from. Fed. R. Bankr. P. 8002(a). Bankruptcy Rule 9023 makes Fed. R. Civ. P. 59 applicable to cases under the Bankruptcy Code and provides that "[a] motion for a new trial or to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment." Fed. R. Bankr. P. 9023.

[8] Although the language regarding defendant's waiver of all rights to appeal or otherwise challenge the Stipulation appears only in Decretal Paragraph 1, it was the understanding of the parties that the waiver applies to the entire Stipulation. As reflected in the record of the October 26, 2015 hearing:

> Mr. King: And, Your Honor, also for the record, I believe that I speak for both sides. There is a statement made in Paragraph 1 that says, "Debtor-defendant waives all rights to appeal or otherwise challenge [this] stipulation". That applies not just to Paragraph 1 but for the entire stipulation. That's acceptable, is it not, Mr. Keesling?

> Mr. Keesling: That was the understanding at the time it was done.

[Oct. 26, 2015 Hr'g Tr. 7:17-25].

now moves to set aside the Order Approving Stipulation, Sanctions Order and Consent Judgment under Fed. R. Civ. P. 60(b).  Even if Rule 60(b) relief might otherwise be available to defendant, as explained below, defendant has failed to meet the heavy burden of proof on the specific elements of Rule 60(b) that he invokes. Thus, while it is true that there are motions to set aside a final order or judgment that meet the heavy burden under Fed. R. Civ. P. 60(b), it is also true that there are those that do not.  This is one that does not.  Defendant's claim is without merit. He has not met the exacting standard necessary to reopen the final orders and judgment, negotiated by the parties and entered by the Court on October 30, 2015.

Rule 60(b) provides that the Court may relieve a party from a final judgment, order or proceeding due to:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party,
(4) the judgment is void;
(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1) - (6).

"A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001); *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (although Rule 60(b) "should be broadly construed to do substantial justice [,] . . . final judgments should not be lightly reopened . . . . Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances.").

"The burden of proof is on the party seeking relief from the judgment." *Int'l. Bhd. Teamsters,* 247 F.3d at 391.  Whether a motion for relief under Fed. R. Civ. P. 60(b) should

be granted is subject to the sound discretion of the court. *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012); *In re Taub*, 421 B.R. 37, 42 (Bankr. E.D.N.Y. 2009). "In no circumstance . . . may a party use a Rule 60(b) motion as a substitute for an appeal it failed to take in a timely fashion." *Stevens*, 676 F.3d at 67.

"When the parties submit to an agreed-upon disposition instead of seeking a resolution on the merits . . . the burden to obtain Rule 60(b) relief is heavier than if one party proceeded to trial, lost, and failed to appeal." *Nemaizer*, 793 F.2d at 63. That is to say, "[w]hen a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." *United States v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994). *See also Humbles v. Reuters Am., Inc.*, No. 05-CV-4895, 2006 WL 2547069, at *5 (E.D.N.Y. Aug. 31, 2006) ("In considering the finality of judgments, Rule 60(b) should not be employed simply to relieve a party from a voluntary and deliberate choice that later turns out to be unfortunate.").

In his Rule 60(b) Motion, defendant seeks relief from the Order Approving Stipulation, the Sanctions Order and the Consent Judgment pursuant to Rules 60(b)(3) and (b)(6). The Court addresses each in turn.

## A. Motion to Vacate Pursuant to Rule 60(b)(3)

To prevail under Rule 60(b)(3), the movant must demonstrate by clear and convincing evidence that the order or judgment from which relief is sought was procured by fraud, misrepresentation or other misconduct. *Fleming v. New York University*, 865 F.2d 478, 484 (2d Cir. 1989) ("[A] Rule 60(b)(3) motion cannot be granted absent clear and convincing evidence of material misrepresentations and cannot serve as an attempt to relitigate the merits."). "To meet this high burden, the [movant] must do more than make 'conclusory allegations of fraud' and must show that the alleged fraud, misrepresentation, or other

misconduct was 'material to the outcome.'" *In re Waugh*, 367 B.R. 361, 367 (Bankr. E.D.N.Y. 2007) (quoting *In re St. Stephen's 350 E. 116th St.*, 313 B.R. 161, 174 (Bankr. S.D.N.Y. 2004)).

In asking this Court to set aside the final orders and judgment negotiated by the parties, defendant's argument comes down to the following contention:   plaintiffs' induced him to sign the Stipulation and consent to the entry of the Sanctions Order and the Consent Judgment by representing that plaintiffs would enter into a global settlement agreement that would resolve all pending litigation, bankruptcy and non-bankruptcy, among plaintiffs, defendant and Brittany, and that but for this promise, he would not have entered into the Stipulation and agreed to the Sanctions Order and Consent Judgment.  Koper Decl. ¶¶ 4, 9. Defendant contends that he performed his part of the agreement by signing the Stipulation and by dismissing a lawsuit that he and Brittany had commenced against TCCSA in the United States District Court for the Central District of California, Case No. SACV 15-0139 ("Kopers' California Federal Court Action").  Koper Decl. ¶ 5.   Defendant further contends that plaintiffs have sought to use the Stipulation, Sanctions Order and Consent Judgment in other pending litigation to gain an advantage and obtain "on the merits" rulings against him, Brittany and Brittany's sister, Carra Crouch. Koper Decl. ¶¶ 7, 8.  This, defendant argues, justifies the relief he seeks, i.e., an order setting aside the Stipulation, Sanctions Order and Consent Judgment under Rule 60(b)(3) based upon plaintiffs' misrepresentation and misconduct.

Plaintiffs, however, take a different view.  To be sure, none of plaintiffs or their counsel recall the events of October 26, 2015 in precisely the same way as defendant. In his Declaration, Mr. May states that on the morning of October 26, 2016, before the sanctions hearing and trial were set to begin, defendant and his counsel proposed a stipulation under which defendant would consent to the relief sought in the Sanctions Motion and to entry of

judgment in the adversary proceedings. May Decl. ¶¶ 11, 12.[9]  According to Mr. May, the proposed stipulation "was not made contingent upon the occurrence of any future event and was not based on any representation that I made to either [defendant or his counsel]." May Decl. ¶14. Further, Mr. May stated that no representation was made regarding a global resolution of all pending litigation.  May Decl. ¶21  ("At no time prior to the submission of the proposed findings of fact and conclusions of law to Judge Scarcella did Mr. Koper or Mr. Keesling ever represent to me that the Stipulation had any contingency or was conditioned on reaching a global resolution of other litigation with the Kopers, nor did I ever represent to either Mr. Koper or Mr. Keesling that TCCSA had offered a global resolution of all such litigation in exchange for the Stipulation, or the Sanctions Order and Judgment on Consent.").

Although plaintiffs dispute any allegation of misrepresentation or misconduct in negotiating the Stipulation and, in particular, that it was conditioned on reaching a global settlement, plaintiffs did agree to meet with defendant's counsel in Dallas, Texas on November 11, 2015 to discuss a resolution of pending litigation. May Decl. ¶ 22.  However, no global settlement has been agreed to and discussions have ended. May Decl. ¶¶ 23-30.

Plaintiffs also take issue with defendant's claim that he kept his part of the "agreement" reached with plaintiffs by dismissing the Kopers' California Federal Court Action.  According to plaintiffs, that action was dismissed in response to a Fed. R. Civ. P. 11 safe harbor letter and draft motion served by plaintiffs on defendant and Brittany.  King Decl. ¶¶ 11-14.

Thus, with equal conviction, plaintiffs and defendant each insist that its recollection of what transpired, and what was agreed to, on the morning of October 26, 2015 is

---

[9] In his Declaration, Mr. King likewise states that it was the defendant who presented the stipulation to the plaintiffs on October 26, 2015.  King Decl. ¶ 3.

unquestionably correct. The central issue is this: did the parties have an agreement to resolve not only the Sanctions Motion and the adversary proceedings pending in this Court, but also all other pending litigation? That issue turns on the language of the operative documents negotiated and agreed to by the parties, i.e., the Stipulation, the Sanctions Order and the Consent Judgment, and the Court's assessment of whether each party's position is reasonable. The operative documents are unambiguous. There is nothing in any of those documents that conditions defendant's agreement to enter into the Stipulation on the occurrence of a future event, i.e., a global resolution of all pending non-bankruptcy litigation among plaintiffs, defendant and Brittany. At the October 26, 2015 hearing, the Court observed that the Stipulation does not contain any condition precedent nor does it provide that the terms and conditions are subject to the occurrence of any other event. [Oct. 26, 2015 Hr'g Tr. 21:12-13, 22-25; 22:1-13]. Neither defendant nor his counsel saw fit to inform the Court otherwise.

Obviously conceding that the Stipulation does not contain any language setting forth what defendant insists was agreed to on October 26, 2015 and what induced him to enter into the Stipulation, i.e., an agreement that a global resolution of other pending litigation would ensue, defendant now contends that the parties had a separate agreement to keep mum about the settlement terms:

> The stipulation that was signed on October 26, 2015 did not contain or mention the parties' settlement terms because the parties specifically agreed that the stipulation would not contain the settlement terms or make reference to them. Further, the parties agreed that most of the settlement terms would be subject to confidentiality agreements.

Keesling Reply Decl. ¶ 10.

Plaintiffs refute defendant's claim that the parties deliberately did not present or describe "additional settlement terms" and remain adamant that there was no pact between

14

the parties to hide any settlement terms from the Court, and that counsel would not participate in any attempt to conceal such terms from the Court.[10]

Defendant has presented no evidence to contradict in any way the representations he made on the record at the October 26, 2015 hearing at the time he asked the Court to approve the Stipulation. His testimony at the October 26, 2015 hearing overwhelmingly confirms the fact that he entered into the Stipulation knowingly, intelligently and voluntarily and that no condition to its effectiveness existed. Defendant did not say anything at all to the Court about any "confidential" agreement reached with plaintiffs or other condition of any kind to the effectiveness of the Stipulation. His testimony, coupled with the fact that he remained silent when the Court observed that the Stipulation was not subject to the occurrence of any future event, completely undermines the credibility of any assertion by defendant that Court

---

[10] At the March 3, 2016 hearing, plaintiffs' counsel, Mr. King, stated:

> Mr. King: I know Mr. Keesling has, in his reply, a declaration and today I've heard for the very first time the suggestion that somehow the reason why this is not on the record is because there was some agreement between the TBN counsel and himself and Mr. Koper that we would hide this from the Court.
>
> And I assure Your Honor that I will not participate and would not participate with Mr. Keesling and Mr. Koper, and I'm quite confident that I speak for Mr. Conway that I say, we would not have participated in such an attempt to seclude from this Court.
>
> Your Honor, we were here for two days [.] Your Honor had set aside five days for us [.] We had plenty of time to do whatever we wanted to do. We could have sat down – Your Honor said both parties participated in the drafting of the [S]tipulation, and while that's true, Your Honor, the fact of the matter is, Mr. Keesling drafted the [S]tipulation. We participated only in some editing of some of the words.
>
> The fact of the matter is, we could just as easily have sat down and ironed out, even if there were details to be negotiated later, and put in a private settlement agreement and said, Your Honor, we have reached a global resolution, we would prefer not giving Your Honor the details if Your Honor would allow us to do that. We have engaged in, and we have both executed a private settlement agreement setting forth the parameters of the global resolution.
>
> Not only did we not do that, Your Honor, but Mr. Keesling and Mr. Koper, after Mr. Koper took that stand and swore an oath, and told you that he was conceding to each and every one of these allegations, sat mute while Your Honor on the record questioned and commented about there were no conditions precedent and no conditions subsequent to the entering of this [S]tipulation.

[Mar. 3, 2016 Hr'g Tr. 35:3-25; 36:1-18.]

approval of the Stipulation, the Sanctions Order and the Consent Judgment was somehow limited by an undisclosed agreement.

At the hearing to consider his Rule 60(b) Motion, defendant did not call any witnesses, introduce any documentary evidence, or seek in any way to discredit the statements made by Mr. May in his declaration as to what transpired on the morning of October 26, 2015.[11] Further, he failed to identify with any specificity who, on behalf of plaintiffs, promised a global resolution of all other pending litigation among plaintiffs, defendant and Brittany. Rather, defendant has repeatedly insinuated, without proof or justification, that plaintiffs promised to enter into a global settlement agreement in exchange for the Stipulation and defendant's consent to the Sanctions Motion and consent to judgment in the adversary proceedings pending before this Court. Despite these insinuations, defendant has failed to present any evidence of misconduct or misrepresentation on the part of plaintiffs. As noted, defendant's testimony on October 26, 2015 disproves his now accusation of misconduct or misrepresentation by plaintiffs.

The record simply does not support defendant's argument. Instead, the evidence demonstrates that defendant, an attorney, represented by sophisticated counsel, reviewed and signed the Stipulation and carefully negotiated the terms of the Sanctions Order and Consent Judgment, all without revealing any terms of an undisclosed promise by plaintiffs to settle other pending litigation. On October 26, 2015, after the Stipulation was read into the record by plaintiffs' counsel, the Court asked defendant to take the witness stand and be

---

[11] Fed. R. Civ. P. 43(c), as made applicable by Bankruptcy Rule 9017, provides that where a motion relies on facts outside the record, the court may consider affidavits or hear the matter wholly or partly on oral testimony or oral depositions. Fed. R. Civ. P. 43(c). *See also Los Alamos Study Group v. United States Dep't of Energy*, 692 F.3d 1057, 1063 (10th Cir. 2012). Thus, a party may submit affidavits and documentary evidence in support of or in opposition to a motion to demonstrate facts not found in the record without a need for an evidentiary hearing. *See Sunseri v. Macro Cellular Partners*, 412 F.3d 1247 (11th Cir. 2005) (holding that it is not an abuse of discretion for the district court to adopt the report and recommendation of a magistrate judge who recommended granting a motion to dismiss for want of jurisdiction on the basis of affidavits and other documents when neither party makes a timely and unequivocal request for an evidentiary hearing).

sworn in by the Court. [Oct. 26, 205 Hr'g Tr. 10:23-25; 11:22-25; 12:1-2]. The Court informed defendant that "[t]he purpose of having you take the witness stand is to assure to the Court that you understand the terms and conditions and the provisions of the Stipulation of Settlement that you have signed this morning and are agreeing to this morning. And so the Court has some questions for you. First is do you understand that having been sworn now, your answers to my questions will be subject to the penalties of perjury or [o]f making a false statement if you do not answer them truthfully." [October 26, 2015 Hr'g Tr. 12:9-17]. Defendant, in response, answered "yes." [Oct. 26, 2015 Hr'g Tr. 12:18]. The Court then proceeded to question defendant. [Oct. 26, 2015 Hr'g Tr. 12:19-25; 13:1-25; 14:1-21]. Specifically, defendant testified that he had an opportunity to review and discuss the terms of the Stipulation with counsel, understood the terms and conditions and the provisions of the Stipulation, and that he was entering into the Stipulation voluntarily and of his own free will. [Oct. 26, 2015 Hr'g Tr. 13:10-24, 14:10-21]. In his testimony, defendant made no mention of any promise or representation by plaintiffs regarding a global settlement agreement. At the conclusion of the Court's inquiry, the Court asked, "Anyone else have anything further for Mr. Koper? "[Oct. 26, 2015 Hr'g Tr. 14:22-23]. Only one party did, that was the plaintiff; defense counsel was silent. Plaintiff asked that defendant confirm that the counterclaims he asserted in the adversary proceedings were being withdrawn with prejudice. In response to the Court's question on this point, defendant confirmed that to be the case. [Oct. 26, 2015 Hr'g Tr. 1424-25; 15:1-14].

In addition, after the Court again asked defendant if he had an opportunity to review the terms and conditions of the Stipulation with his counsel, to which he responded yes [Oct. 26, 2015 Hr'g Tr. 18:21-25; 19:1-2], his counsel, upon questioning by the Court, stated that he had an opportunity to review the terms and conditions of the Stipulation and to discuss them with defendant. [Oct. 26, 2015 Hr'g Tr. 19:3-7]. It was at that point that defendant was

17

excused from the witness stand. [Oct. 26, 2015 Hr'g Tr. 19:8]. Again, there was no mention by defendant or his counsel of any promise made by plaintiff as to a global resolution or that defendant was hesitant to enter into the Stipulation but for the promise of a global resolution.

As such, by the Rule 60(b) Motion, the Court is presented with a choice between two conflicting interpretations of what occurred on the morning of October 26, 2015 and to what the parties agreed to. Plaintiffs' position is reasonable. Defendant's is not. If an agreement on a global resolution had been reached, there was every incentive on the part of defendant to make that critical piece of the settlement known to the Court. He did not. Defendant could have insisted that the Stipulation contain such conditions and so advise the Court on the record, or ask that the "confidential agreement" remain under seal with *in camera* disclosure. It is unreasonable and illogical to conclude that defendant would concede as true the serious allegations of fraud and spoliation of evidence and the non-dischargeability of substantial debt to plaintiffs, and withdraw his counterclaims with prejudice, if his agreement to do so was contingent on the occurrence of a future event.

Defendant made a deliberate, strategic, decision to resolve the Sanctions Motion and the adversary proceedings. His agreement to do so is plainly set forth in the Stipulation, the Sanctions Motion and the Consent Judgment. Because defendant has failed to demonstrate a factual basis to justify the relief he seeks, the Court does not find that defendant has met his burden of proof by clear and convincing evidence that the Stipulation, Sanctions Order and Consent Judgment were obtained through fraud, misrepresentation, or other misconduct on the part of plaintiff. The Court therefore denies defendant's motion to set aside the Stipulation, Sanctions Order and Consent Judgment pursuant to Rule 60(b)(3).

## B. Motion to Vacate Pursuant to Rule 60(b)(6)

Defendant also relies on Rule 60(b)(6) which is a catch-all provision that allows a court to set aside a final order or judgment for "any other reason that justifies relief." Fed. R. Civ.

P. 60(b)(6). However, when a movant's Rule 60(b) claim falls within the ambit of any other section of Rule 60(b), relief under (b)(6) is not available. That is to say, Rule 60(b)(6) and the preceding five enumerated provisions under 60(b) are mutually exclusive. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 864 (1988). "Controlling cases have held that if the reasons offered for relief from judgment can be considered in one of the more specific clauses of Rule 60(b), such reasons will not justify relief under Rule 60(b)(6)." *Int'l. Bhd. Teamsters*, 247 F.3d at 391-92.

Where a party seeks relief under Rule 60(b)(6) for reasons not covered by any of the other preceding five enumerated provisions under Rule 60(b), the burden of proof is no less exacting.

> The rule . . . "confers no standardless residual discretionary power to set aside judgments on mere second thought," and allows relief only under "extraordinary circumstances" that are "sufficient to overcome our overriding interest in the finality of judgments," *Mayberry v. Maroney*, 529 F.2d 332, 337 (3d Cir. 1976) (Gibbons, J. concurring), or "where the judgment may work an extreme and undue hardship." *DeWeerth v. Baldinger*, 38 F.3d 1266, 1272 (2d Cir. 1994).

*Abdullah v. Immigration and Naturalization Service*, No. 97 Civ. 5904, 2003 WL 22966290, at * 2 (Bankr. S.D.N.Y. 2003). *See also Montco, Inc. v. Barr (In re Emergency Beacon Corp.)*, 666 F.2d 754, 759 (2d Cir. 1981) (noting that relief under Rule 60(b)(6) is reserved for "when there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship . . . ."). With respect to relief from a judicially approved settlement, "[a] failure to properly estimate the loss or gain from entering a settlement agreement is not an extraordinary circumstance that justifies relief under Rule 60(b)(6)." *Bank of New York*, 14 F.3d at 760.

Here, defendant has framed his claim for relief in terms covered expressly by Rule 60(b)(3). His allegations of misrepresentation or other misconduct on the part of plaintiffs

mirror his challenge under Rule 60(b)(3). Thus, relief under Rule 60(b)(6) is unavailable. Even if the legal barrier to invoking Rule 60(b)(6) could be surmounted, as noted above, defendant has failed to provide any evidence of such misrepresentation or other misconduct by plaintiffs, and has thus failed to demonstrate "extraordinary circumstances" sufficient to justify relief under Rule 60(b)(6).   The Court therefore denies defendant's motion to set aside the Stipulation, Sanctions Order and Consent Judgment pursuant to Rule 60(b)(6).

## V.    Conclusion

For the foregoing reasons, defendant's Rule 60(b) Motion to set aside the Order Approving Stipulation, the Sanctions Order and the Consent Judgment, and to restore the evidentiary hearing on the sanctions motion and trial in this adversary proceeding to the Court's docket is denied.

So ordered.



**Dated: May 23, 2016**
**Central Islip, New York**

**Louis A. Scarcella**
**United States Bankruptcy Judge**